**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 9, 2019**

# In the Court of Appeals of Georgia

A19A1448. HANNAH et al. v. HATCHER et al.

DILLARD, Presiding Judge.

Wayne and Billie A. Hannah appeal from the superior court's dismissal of their petition for emergency and permanent custody of minor child L. R. in an action against her legal mother, Sara Paige Hatcher, and her biological father, Randy Keith Ray. The Hannahs argue that the superior court erred by (1) concluding that they lacked standing as L. R.'s paternal grandparents to bring an action for custody when their son, Ray, never legitimated L. R., and (2) dismissing the action when third parties may prevail in custody actions under OCGA § 19-7-1 (b.1). Because we agree the superior court erred in concluding that the Hannahs lack standing, we reverse the court's judgment and remand the case for further proceedings consistent with this opinion.

The record shows that the Hannahs filed a petition for emergency and permanent custody of L. R. on November 21, 2018. In doing so, the Hannahs alleged that (1) they were the paternal grandparents to L. R., who was 8 years old at the time; (2) their son was incarcerated and never legitimated L. R.; (3) Hatcher was L. R.'s natural mother and legal custodian; (4) L. R.'s parents never married; (5) L. R. resided with them for approximately 80 percent of her life and currently did so; and (6) Hatcher executed an agreement on September 25, 2017, granting temporary guardianship to Billie Hannah. Thus, the Hannahs requested that the court grant them immediate, temporary, and permanent custody of L. R. because her parents were unfit for a number of reasons—ranging from current incarceration, pending criminal charges, drug abuse, and more. In the alternative, Billie Hannah requested that she be granted grandparent visitation.

On November 27, 2018, the superior court awarded temporary legal and physical custody of L. R. to the Hannahs and scheduled a show-cause hearing for January 9, 2019, to establish whether the Hannahs' petition should be granted. Neither Hatcher nor Ray filed a response to the petition. Then, at the hearing, Billie Hannah testified, and the Hannahs tendered into evidence both the temporary

2

guardianship agreement previously executed by Hatcher, as well as a July 15, 2011 consent order for child support concluding that Ray was "the parent" of L. R.

The superior court issued an order on January 10, 2019, noting that Hatcher "was not present at the hearing but she was personally served with a summons and copy of this custody action on the day of the hearing" and "left the courthouse after she was served with this action." The court also noted that Ray is L. R.'s biological father but "not the legal father," and that he "was not served with this action, has not acknowledged service, and was not present at court for the hearing" because he is "incarcerated in a county detention center."

The superior court's order went on to explain that, after receiving testimony and learning that Ray was not married to Hatcher and had never legitimated L. R.,[1] it was unsure of its ability to proceed. The court then concluded that the facts of the case differed from those in *Reeves v. Hayes*,[2] which the Hannahs asserted provided them with standing. The court also determined that it could not apply *habeas corpus* law to grant custody to the Hannahs as third parties because it was not faced with a habeas action. Finally, the court noted that it was unable to find supporting authority

---

[1] Billie Hannah provided testimony as to these facts.

[2] 266 Ga. App. 297 (596 SE2d 668) (2004).

3

for the Hannahs' position that they could petition for custody on the ground that their son, Ray, had consented to paternity.

Accordingly, the superior court dismissed the request for emergency and temporary custody. This appeal by the Hannahs follows.[3]

1. The Hannahs argue that the superior court erred by concluding that they lacked standing as L. R.'s paternal grandparents to bring an action for custody when Ray never legitimated L. R. We agree.

Under OCGA § 19-7-1 (b.1),

in any action involving the custody of a child between the parents or either parent and a third party limited to *grandparent*, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness.[4]

---

[3] Although both Hatcher and Ray are listed as appellees, neither is represented by counsel nor filed an appellee brief.

[4] (Emphasis supplied).

4

The Hannahs argue that they have standing to petition for custody under OCGA § 19-7-1 (b.1) as paternal grandparents, and that the superior court erred in concluding otherwise.

Specifically, the superior court concluded that this case differs from *Reeves v. Hayes*,[5] upon which the Hannahs rely, because in *Reeves*, "the biological father died and no longer could file for legitimation," whereas L. R.'s father is still alive and could file for legitimation. Although the superior court is correct that these facts differ, it incorrectly determined that a father's ability to legitimate a child has any impact on his *parents'* standing to petition for custody under OCGA § 19-7-1 (b.1) as grandparents.

In *Reeves*, we held that although the child's father had not legitimated the child, and there was no possibility he could do so because he was deceased, "no authority limit[s] a grandparent's standing to challenge custody to circumstances [in which] the father has legitimated the child[.]"[6] We further noted that OCGA § 9-7-3 (a) (2) defines "grandparent" as "the parent of a parent of a minor child, the parent of a minor child's parent who has died, and the parent of a minor child's parent whose

[5] 266 Ga. App. 297 (596 SE2d 668) (2004).

[6] *Id.* at 297.

parental rights have been terminated." Thus, although this definition is "limited to this Code section (outlining visitation rights for grandparents), it sheds light upon a grandparent's status as that of the parent of a parent."[7]

Here, it is undisputed that Ray is L. R.'s biological father or parent. And as our Supreme Court has recognized, even a father who has never legitimated a child is a *parent* with certain rights and duties.[8] Indeed, Ray's status as L. R.'s parent has even been recognized in a consent order for child support. It follows, then, that Ray's parents, the Hannahs, are L. R.'s grandparents, regardless of the fact that Ray never legitimated L. R.[9] Accordingly, the Hannahs' right as paternal grandparents to bring

---

[7] *Id.*

[8] *See Nelson v. Taylor*, 244 Ga. 657, 658 (1) (261 SE2d 579) (1979) ("It is clear . . . that the putative father is also a parent. . . . [A] [putative] father has some parental rights, as well as duties, in regard to his illegitimate child."); *accord Reeves*, 266 Ga. App. at 297; *Welch v. Suggs*, 175 Ga. App. 233, 233 (333 SE2d 31) (1985).

[9] *See Reeves*, 266 Ga. App. at 297 ("It follows then that the father's parents are grandparents, regardless of whether the father had legitimated the child."); *see also Nelson*, 244 Ga. at 658 (1) (holding that the father of an illegitimate child is a parent, even without legitimation and, accordingly, the father's parents are relatives for purposes of adoption); *Welch v. Suggs*, 175 Ga. App. 233, 233 (333 SE2d 31) (1985) (relying upon *Nelson* to hold that "the appellants are grandparents within the meaning of the statute and that their claim for visitation rights was properly before the court and should have been heard" despite the fact that paternal grandparents' son had never legitimated child).

an action for custody is controlled by a showing that their son, Ray, was a parent of L. R., not by Ray legitimating L. R.[10] Thus, the superior court erred in concluding that the Hannahs lacked standing to petition for custody of L. R., and we reverse the superior court's judgment and remand for further proceedings consistent with this opinion.[11]

2. Given our holding in Division 1, we need not address the Hannahs' additional argument that the superior court erred by dismissing the action when unspecified third parties may prevail in custody actions under OCGA § 19-7-1 (b.1).

*Judgment reversed and case remanded with direction. Gobeil and Hodges, JJ., concur.*

---

[10] *See Reeves*, 266 Ga. App. at 298 ("The [appellants'] right as paternal grandparents to bring an action for custody is controlled by a showing that their son was a parent of the child, not by their son legitimating the child.").

[11] *See id.* ("[W]e hold that the court erred in finding that the [appellants] lacked standing, reverse the judgment, and remand the case for proceedings consistent with this opinion.").